```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

**STEPHEN LAMONT CROSBY**                                                      **PETITIONER**

**VS.**                             **CIVIL ACTION NO. 3:04-CV-898-WHB-JCS**

**DONALD CABANA AND JIM HOOD**                                **RESPONDENTS**

_____

### REPORT AND RECOMMENDATION OF
### UNITED STATES MAGISTRATE JUDGE

#### I. Procedural History

Stephen Lamont Crosby was convicted by a jury of aggravated assault, kidnaping, and being a convicted felon in possession of a firearm after a trial on January 28-29, 2002, in the Circuit Court of Rankin County, Mississippi. He was sentenced as a habitual offender on February 20, 2002, to serve three terms of life imprisonment without parole in the custody of the Mississippi Department of Corrections. R. Vol. 1, p. 58.

Crosby appealed his conviction and sentence through counsel to the Mississippi Supreme Court, assigning the following errors as grounds for reversal:

    A.    Whether the trial court committed reversible error in denying petitioner's motions for a directed verdict, a new trial and a JNOV.

    B.    Whether the trial court committed reversible error in allowing the State to amend the indictment prior to trial.

    C.    Whether the trial court erred in allowing a sheriff's investigator to testify as a firearm expert.

    D.    Whether the trial court committed reversible error in not granting a continuance at the time of an alleged discovery violation.

      E.    Whether the trial court committed reversible error in allowing hearsay and permitting the State to lead witnesses.

On May 6, 2003, the Mississippi Court of Appeals affirmed Petitioner's judgment of conviction and sentence in a written opinion. Crosby v. State, 856 So.2d 523 (Miss. App. 2003), reh'g denied, July 15, 2003, (No. 2002-KA-00422), cert. denied, Dec. 4, 2003 (Cause No. 20020-CF-00422).

On May 7, 2004, Crosby filed an "Application for Leave to Proceed in the Trial Court on a Motion for Post-Conviction Collateral Relief" in the Mississippi Supreme Court (Cause No. 2004-00857). Crosby raised the following claims of ineffective assistance of counsel:

    1.    Trial counsel failed to move to suppress illegally seized evidence.

    2.    Trial counsel failed to challenge or have blood stain evidence tested.

    3.    Trial counsel failed to investigate and interview witnesses.

    4.    Trial counsel failed to investigate petitioner's mental illness and to seek a competency hearing.

By Order filed August 5, 2004, the Mississippi Supreme Court denied the petition, holding in part that the appellant failed "to make a substantial showing of the denial of a state or federal right as required by Miss. Code Ann. § 99-39-27(5)."

On November 4, 2004, Crosby filed his Petition for Writ of Habeas Corpus in this Court, assigning the same grounds that he

2

previously raised in the state courts on direct appeal and in his motion for post-conviction relief, summarized as follows:

1. Whether he was denied effective assistance of counsel because:

    Counsel failed to object to or move to suppress the allegedly illegally seized firearm.

    Counsel failed to object or move to suppress the testimony of Monica Hill regarding blood stains and failed to have them tested.

    Counsel failed to investigate and interview witnesses.

    Counsel failed to seek a competency hearing or introduce evidence of petitioner's mental health.

2. Whether he was denied a fair trial based on the trial court's failure to grant a continuance at the time of trial because of an alleged discovery violation.

3. Whether the trial court committed reversible error in not granting petitioner's motion for directed verdict or JNOV as to the possession of a firearm by a convicted felon and aggravated assault charges.

4. Whether the kidnaping verdict was against the overwhelming weight of the evidence.

The Respondents assert that the applicable portions of the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"], Pub. L. 104-132, 110 Stat. 12144, prevent this court from granting relief based upon Crosby's petition.

## II. Standard of Review

The instant case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), contained in 28

U.S.C. 2254(d) (2002). The applicable provision provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or *involved an unreasonable application of, clearly established Federal law*, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).

Under AEDPA, where the state court adjudicated the petitioner's claim on the merits, this Court reviews questions of fact under § 2254(d)(2), while questions of law or mixed questions of law and fact are reviewed under § 2254(d)(1). Factual findings are presumed to be correct, and the Court defers to the state court's decision regarding factual determinations unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000); § 2254(d)(2). The Court independently reviews questions of law and mixed questions of law and fact to determine whether the state court's decision thereon was either "contrary to" or an "unreasonable application of" federal law. Williams v. Taylor, 529 U.S. 362, 403–408 (2000); Hill, 210 F.3d at 485.

The first step in this inquiry is to determine what federal law should be applied to the state court's decision. Williams, 529 U.S. at 404. The determinations of the state courts must be tested against "clearly established Federal law, as determined by the Supreme Court of the United States." Id.; § 2254(d)(1). Next, this Court must determine whether the state court's decision was "contrary to" that established Federal law. The proper standard is an **objective** one, not subjective. Id. at 408-409. The term "unreasonable" was distinguished from "erroneous" or "incorrect"; thus, a state court's incorrect application of the law may be permitted to stand if it was, nonetheless, "reasonable."

A summary of the AEDPA law is that ultimately, "[t]o prevail on a petition for writ of habeas corpus, a petitioner must demonstrate that the state court proceeding 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Robertson v. Cockrell, 325 F.3d 243, 247-48 (5th Cir. 2003) (en banc) (quoting 28 U.S.C. § 2254(d)(1) (2000)). The courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." Catalan v. Cockrell, 315 F.3d 491, 493 (5th Cir. 2002) (citation and quotation omitted).

### III.  Facts

The evidence reflects that on May 5, 2001, James Kevin Gibson was at Otis Singleton's trailer at 406 Rose Hill Road in rural

5

Rankin County, Mississippi.  Marcus Craft and Brandon Young were in the trailer when Gibson arrived.  Another car pulled up during the evening, and Craft and Young heard a fight outside between Gibson and another person, later identified as the Petitioner Crosby.  Crosby's girlfriend, Joyce Anne Kemp, arrived and saw Crosby strike Kemp with his fists; she tried to break up the fight but was told to go inside.  R. 50.  Craft and Young testified that a "red beam" came through the bedroom window across their chests during the commotion.  R. 34.  Neither of them ever saw Crosby.  Joyce Anne Kemp heard a car leave soon after she went in the trailer and then noticed that both Crosby and Gibson were gone.

The State's theory of the case is that Crosby beat Gibson unconscious with a unique gun with a laser sighting apparatus.  He left blood on the ground, porch, car, his shoes, and the gun.  While Gibson was lying on the ground, weak and bleeding, Crosby put him into a car, drove away, then dumped him in a ditch miles away.  Crosby then proceeded to wipe down the car for prints and went to the Shell station convenience store in Magee to wash up.  At that store, captured on videocamera, 23 miles from the trailer, Crosby gave the cashier a "bloody' dollar bill for change.  R. 71-74.  He was also seen with muddy clothing and shoes.  At this store, police found a green Ford belonging to Gibson, with blood smears on the trunk lid, sides of the door frames, inside the trunk and within the car itself.   R. 123-24; 126-27.

The State's theory of the case and evidence indicated that Crosby left the Shell station and went to a friend's house to clean

6

up. He put his clothes in a plastic bag and went to search for his laser gun which he lost in the fight. It was found and returned to him. He then went to his girlfriend Joyce Anne Kemp's mother's home. No evidence was presented as to how Crosby got from the Shell station in Magee to his girlfriend's home, as Joyce testified that she did not pick him up. R. 66. The police discovered Gibson in a ditch, still alive, on the side of road between Magee and Mendenhall. R. 82-83. The police stopped Crosby and his girlfriend in her car. With Joyce's permission, they searched her car and found the laser gun in the trunk and the clip or magazine for the weapon under the passenger seat where Crosby was seated. Joyce testified that it was not her gun.

    The victim testified that he could not remember the assault or the night in question. R. 164. Neither of the men in the trailer, Marcus Craft or Brandon Young, actually saw Crosby but only heard the fight and saw the "red beam" through the window. R. 34, 200. Joyce Kemp did see Crosby strike Gibson, but she only saw him strike Gibson with his fists, not a gun. R. 50.

    Crosby was represented at trial and on appeal by Attorney Dan W. Duggan, Jr., appointed as his public defender, whereas the State was represented by Assistant District Attorneys Pat Lemon and John K. Bramlett. The Honorable William E. Chapman, III, Circuit Judge, presided at the trial.

### IV.  Discussion of Assigned Errors and the Applicable Law

### A.  Did the Trial Court's Failure to Grant a Continuance Render Crosby's Trial Unfair? (Ground 2)

Crosby contends that the State violated the discovery rules by failing to inform defense counsel that blood was found on the gun. Gregg Edlund, an investigator with the Rankin County Sheriff's department, was allowed to testify as an expert for the limited purpose of answering questions concerning the clip found under the seat matching the gun found in the trunk. During Deputy Eklund's testimony, he mentioned that blood was found on the gun. R. 141. Defense counsel had never received reports in discovery that blood was found on the weapon. He objected, contending that this information was new and that he should be granted a continuance or a mistrial. R. 154-55. The motions were denied, and Crosby claimed that he was entitled to copies of any reports from which the State's witness was to testify. R. 158-60. The Mississippi Court of Appeals applied Box v. State, 437 So.2d 19, 23 (Miss. 1983), and found that the underlying discovery violation claim was without merit. It noted that the defense was aware that the gun was in the custody of the Rankin County Sheriff, and it had ample opportunity to test the gun. 856 So.2d at 531. No laboratory analysis was done on the gun, and the field testing results were only part of Ecklund's testimony. R. 153. The court concluded that no violation can be found due simply to the fact that an officer did not detail the field testing results in his written report. R. 158. Because no discovery violation occurred, the court concluded that the continuance was within the discretion of the trial court. Id. at 530-531.

We have reviewed Crosby's allegations in order to determine whether the claims of discovery abuse violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and the materiality standard set forth in <u>United States v. Agurs</u>, 427 U.S. 97, 114 (1976). Primarily, our review was of the state court's decision to determine if it violated <u>Brady</u> and <u>United States v. Agurs</u>, or was an unreasonable application of these cases. We find that any possible violation was not *material* because there is no indication that the information would have altered the guilty verdicts. Furthermore, in order for a denial of a continuance to form the basis of habeas relief, it must have been so arbitrarily and fundamentally unfair so as to violate the constitutional principles of due process. Even if it is shown that the trial court **did abuse its discretion**, a habeas petitioner must also show that there is a **reasonable probability that the verdict might have been different had the continuance been granted.** <u>Schrader v. Whitley</u>, 904 F.2d 282, 288 (5th Cir. 1990)(<u>quoting</u> <u>Hicks v. Wainwright</u>, 633 F.2d 1146, 1148 (5th Cir. Unit B., 1981) (<u>emphasis added</u>).

Crosby cannot and has not met this stringent standard. The court's failure to grant a continuance simply is not a constitutional violation under these circumstances. The state court's decision did not unreasonably apply clearly established federal law.

### <u>B. Was the Evidence Constitutionally Sufficient to Support the Verdict for All the Convictions? (Ground Nos. 3 & 4)</u>

The Petitioner also challenges the "weight of the evidence" in his case, and this is not a ground for habeas relief. Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985), cert. denied, 476 U.S. 1123 (1986). However, we have considered the evidence presented at Crosby's trial to determine if it is constitutionally sufficient to support the guilty verdicts under the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979). Although the Mississippi Supreme Court utilized state law cases and did not specifically cite the Jackson standard, that court did find the evidence sufficient to support the verdict. In our opinion, the state court's decision was **not** an unreasonable application of the Jackson standard.

In Jackson, the United States Supreme Court articulated the standard of review to be applied in federal habeas corpus claims that allege that a state court conviction was based on insufficient evidence. The relevant question is, "[w]hether, after viewing the evidence and the reasonable inferences which flow therefrom in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 324; *see also* United States v. Smith, 203 F.3d 884, 887 (5th Cir. 2000), citing Jackson; West v. Johnson, 92 F.3d 1385, 1393 (5th Cir. 1996). Further, "[f]ederal Courts are not forums in which to relitigate state trials." Autry v. Estelle, 464 U.S. 1, 3 (1983).

The convictions in this case primarily depended upon a combination of circumstantial evidence. Although the direct evidence of guilt on each of the three charges was not strong, it meets the <u>Jackson</u> standard. Crosby contends there is no evidence that a deadly weapon was used, an element of proof for the crime of aggravated assault. Further, there was no direct evidence that Crosby possessed a gun, necessary for the conviction of felon in possession. Finally, there was no evidence that Crosby actually kidnaped the victim.

The state court applied the same standard to the evidence as set forth in <u>Jackson</u>, noting that it was the jury's duty to determine the credibility of the witnesses and to resolve the conflicts in the evidence. We have reviewed the evidence and find that the state court's decision is not an unreasonable application of <u>Jackson</u> to the facts in this case.

The conviction for aggravated assault requires proof that a deadly weapon was used. The mere fact that a bloody gun was admitted into evidence, found in the same car as Crosby, with the clip found under his seat, is evidence that a gun was used. R. 141. There was testimony that Crosby was beating the victim with his fist, but also testimony that Crosby was seen with a gun. R. 23. There was testimony that Crosby was attempting to find his gun that evening. Two witnesses did see a laser light coming from outside the trailer where Crosby was, and the gun found near Crosby had laser sights. Evidence from experts indicated that the

11

victim's serious injuries were unlikely to be caused by fists; instead, the injuries were inflicted by something harder, like a gun. The State's version of the crime is that Crosby beat the victim with his fists as he held the gun in his hand. There is sufficient circumstantial evidence to support a finding that Crosby beat Gibson with the laser gun recovered in his girlfriend's car.

There is also substantial evidence to support the kidnaping conviction. Testimony confirms that Crosby was fighting with Gibson, and then Gibson was seen weak and bleeding and lying on the ground. R. 51. Then Crosby was seen standing over the trunk of the car, and the car pulled away. Later, miles away, the unconscious Gibson was found lying in a ditch. Between that time, there is a video tape of Crosby coming to the Shell station to clean himself up and giving bloody money to the clerk. This is sufficient substantial evidence to support a finding that Crosby took Gibson at force and against his will.

As to the felon in possession charge, direct evidence confirmed that Crosby had previously been convicted of manslaughter, aggravated assault, and possession of a firearm by a felon. R. Vol. 2, p. 54. There is eyewitness testimony that Crosby had a gun with a laser sight and was aiming it at individuals. R. 23, 32, 33, 35, 37. There is also evidence that Crosby attempted to find and retrieve this gun the next morning, and that it was found in the car in which he was riding. Under Jackson, this is substantial evidence sufficient to support the verdict for possession of a firearm by a felon.

The Petitioner's trial revolved around the credibility of the witnesses' testimony. The undersigned finds that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt based on the evidence presented. Moreover, it is well-settled that a federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts. Marter v. Blackburn, 777 F.2d 1007, 1012 (5th Cir. 1985); Dunn v. Maggio, 712 F.2d 998, 1001 (5th Cir. 1983). The state court's decision did not unreasonably apply Jackson, and no habeas relief may be granted based upon the sufficiency of the evidence.

### C. Did Crosby Receive Constitutionally Ineffective Assistance of Counsel? (Ground 1)

The Mississippi Supreme Court considered Crosby's allegations in his post-conviction motion that his attorney was constitutionally ineffective. That court rejected the claims without explanation, other than a statement that no federal or state right violation was shown. We are aware that the Mississippi Supreme Court analyzes all Sixth Amendment claims under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). The Strickland standard for determining the effectiveness of counsel is a two-prong test set forth by the Supreme Court. Obviously applying Strickland to Crosby's claims regarding his attorney, the Mississippi Supreme Court found that no constitutional violation existed. Strickland provides "clearly

13

established federal law" regarding claims of ineffective assistance of counsel. Unless the Mississippi court's decision was an *unreasonable application* of Strickland, no habeas relief may be granted.

Crosby charges many deficiencies against his counsel. He contends that his counsel failed to object to the weapon which was admitted into evidence; that he failed to object to the testimony of Monica Hill concerning blood on the money; he failed to investigate and interview eyewitnesses, and he failed to file a motion requesting that a competency hearing be conducted.

As to the gun, there were many references to it in the testimony, and many objections were made by the defense regarding the gun. R. V. 2, pp. 16-17, 27, 32, 53-56, 91, 111, 113, 119; R. V. 3, pp. 178, 197. The gun was admitted into evidence via the testimony of officer Craig Williams. R. V. 2, pp. 110-113. Officer Williams clearly testified that the search was conducted *pursuant to the consent* of its owner, Joyce Kemp. R. 110-111. Ms. Kemp was also a witness at the trial. Any objection defense counsel may have made to its admission would have been futile, and the failure to assert a meritless objection cannot be grounds for a finding of deficient performance. Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997) citing Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994).

Monica Hill testified that a "blood substance" was on the one dollar bill that Crosby gave her for change. R. V. 2, pp. 71, 75. Defense counsel *did object* to its admission, based upon her lack of

14

expert qualifications to call it blood. R. 71. However, the court overruled the objection, finding her capable of having a lay opinion as to what looked like blood. There was a video of Ms. Hill attempting to clean the money after Crosby gave it to her. Mr. Duggan cannot be considered deficient regarding the admission of her testimony; there is most probably nothing that could have been done to suppress her relevant testimony. Crosby contends that the blood should have been tested. Yet, her testimony was not used to establish that the blood was that of a particular person. He fails to explain what the testing may have revealed that would have altered the jury's verdict. No deficiency can be found.

Crosby also contends that his attorney should have investigated his case more thoroughly and interviewed witnesses Joe Young and Chris Brown. Yet, it is unclear what Young and Brown would have said that would have aided the defense. Complaints of uncalled witnesses are not favored in a federal habeas corpus court because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have testified to are largely speculative. McCoy v. Cabana, 794 F.2d 177, 183 (5th Cir. 1986); Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984); United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (" . . . this Court has viewed with great caution claims of ineffective assistance of counsel where the only evidence of a missing witness' testimony is from the defendant.") It is doubtful that the result of the trial

15

would have been different if Young and Brown had been interviewed and brought to trial to testify.  Further, there is no proof that Crosby's counsel did **not** investigate these potential witnesses' knowledge regarding the facts in this case.  The failure to present the testimony of these witnesses is certainly not so prejudicial as to undermine the validity of the verdict.

Generally, Crosby complains that his attorney failed to investigate the facts underlying the circumstances which led to his convictions.  However, his allegations are conclusory and not supported by specific facts which would show Mr. Duggan failed to discover any relevant information which would aid in Crosby's defense.  In order to establish a deficiency, a petitioner must give very **specific** facts that should have been discovered but were not.  Crosby does not do so.

"A defendant who alleges failure to investigate must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989).  "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Strickland, 466 U.S. at 691.  Crosby has failed to meet this standard.

Finally, Crosby contends that he was "deprived of his right to a competency hearing" and that his counsel was ineffective for

failing to request the court for such a hearing and/or a psychiatric examination. He contends that he has a history of mental illness, having been admitted to Charter Hospital in Jackson in 1996. According to Crosby, his attorney should have informed the trial court of his mental illness.

The constitutional standard for assessing mental competence to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as a factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402 (1960); *accord* Godinez v. Moran, 509 U.S. 389, 396 (1993). Crosby has not introduced any evidence to support a claim that he was incompetent to stand trial under this standard at the time of his convictions. Merely having been treated for "mental problems" at some time in the past is simply not enough to establish a likelihood that he was incompetent. No deficiency has been stated by these conclusory allegations against his attorney.

As both the United States Supreme Court and the Fifth Circuit Court of Appeals have recognized, a criminal defendant is not constitutionally entitled to a perfect trial, just a fair one. Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986); Sawyer v. Butler, 848 F.2d 582, 594 (5th Cir. 1988). A review of the record confirms the undersigned's conclusion that Crosby did receive a fair trial, represented by adequate counsel.

## V. Conclusion

We have thoroughly reviewed both the trial and appellate records regarding Crosby's convictions for aggravated assault, kidnaping, and felon in possession of a firearm. His counsel ably performed, bringing the pertinent legal issues before the courts in an effective manner. His trial was conducted in a fair manner, and he was allowed to call any witnesses to all motion hearings and the trial. We find no errors which have permeated these proceedings so as to render his trial unfair in a constitutional sense.

It is therefore the recommendation of the undersigned United States Magistrate Judge that the petition of Steven Lamont Crosby be dismissed with prejudice and that a Final Judgment in favor of the Respondents be entered.

The parties are notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. §636, Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 12th day of April, 2006.

                    S/ James C. Sumner
              UNITED STATES MAGISTRATE JUDGE